Good morning our Chief Judge McGeough, Judge Owens, Judge Fletcher. My name is Thomas Gerard and along with my co-counsel John Tim Chisholm we represent Fire Lieutenant Travis Bearden who is currently serving on active duty orders under Title 32 but he is here with us today for this very important case. I will attempt to reserve two minutes for rebuttal if I may. This is a straightforward USERRA discrimination and denial of benefits case which completely fell apart when the trial court below misinterpreted a Washington statute that provides 21 days of military leave to a service member each year that they're absent for military service. Each year that they're scheduled for work? I will get to the schedule to work each year that they're absent but the statute does indicate with regards to the schedule to work if you'd like me to address section 4a of the statute now. When you get there. Okay I will. That was portion of it that was still my introduction but subsequent to the decision in our trial court the Washington State Court of Appeals in the Martin case described the outcomes of our case as an absurd result and an extremely discriminatory end run around the law. Today first I plan to address two of the principal arguments that Ocean Shores has made on appeal that includes the misinterpretation of the RCW judge. Second I plan to address the if I get time I plan to address the merits of the discrimination claim for Mr. Bearden. Third I plan to address other errors that were made in the trial court and of course we have an associated pending unopposed pending motion to certify a question to the Washington State Supreme Court and ask the court to consider that as well. On this appeal Ocean Shores makes two principal arguments. The first one is Lt. Bearden as interpreted by the trial court below was not entitled to paid military leave under the RCW because he was on quote-unquote extended military leave and he did not seek the reemployment rights under his reemployment rights under USERRA or follow those requirements. The second argument made by appellants on appeal was not addressed in the trial court whatsoever but it's an important argument and we need to deal with it here. They argue that the RCW is not a benefit of employment under USERRA because it's only available to service members. We'll get to that in a moment. As to the first... We'll get to a lot in a moment. I also have a question on what you contend scheduled-to-work means. With regard to the statute it's very clear let me go to go to the actual statute. When the RCW was passed in its original form I believe it was in 1991 it stated that this act applies to all public employees who reported for active duty or active military training duty. Later the statute was amended again to change from 15 days of leave to 21 days of leave and then in its current most current form when the language was added in 2010 it stated that the officer of the employee shall be charged military leave for only the days he or she is scheduled to work. That is now section 4A of the statute which was changed in about 2018. In addition to the addition to changing the reorganization reorganizing the statute in 2018 added an explanatory section B under under the statute as well which goes on to discuss the non-traditional hours that a lot of public servants engage in and those types of jobs are like nurses and cops and firefighters who often have jobs that spans several calendar days. The legislature did that because of the because in you know cardinal rule of Kansans construction is the legislature is aware of the common law and would not write a statute to defeat that. But we know that the in the Washington Federation case which is in the briefing the exact issue which is addressed by this language in the statute scheduled to work is what was brought up. In the Federation case what occurred was an agency had implemented a rule and that rule allowed the agency to charge military leave for the full duration of someone's absence. Not just the days they're scheduled to work but also those intervening days when they're not scheduled to work. That was a problem and what in the Supreme Court said no that's not what we're talking about here. We're talking about leave days from work. We're talking about an employment related statute and so what we're talking about is days you would be scheduled to work. That's what you should be charged for. That is what 4A addresses under the statute with regard to schedule to work. Help me, talk me out of my the reading that I think is the most natural. As I look at the statute it's designed to protect and to provide payment for people who are in the reserves. Yes. Who while working in a job such as the job here are required to do training while in the reserves and it may be up to 21 days. But I don't see it as designed to provide payment for people who are not just doing their required training but who are actually deployed for a period of years. I'm gonna disagree with that interpretation obviously. I bet you are. But tell me why I'm wrong. I think you're wrong because first of all the legislature when they when they passed this statute they absolutely intended it to apply to periods of long-term military leave. In their declaration they said when I'll have it right here so I'll paraphrase in the when the statute was passed it declared that this statute applies to all persons called to active duty or active military duty training. When this if you look at the words of the statute in section 1 it specifically identifies periods of service their members are called to active duty which are long-term periods under title 10 and title 32. And in my introduction I noted the fact that my client was called to active duty on title 32 orders. There's literally no doubt within the statute that is the legislature intended it to apply to those periods. Not simply just the one weekend a month or the traditional two only apply to military reservice annual training requirements. It was intended to apply to all periods of service. When we look at the Martin case which I which was discussed and there was a little bit in the response briefing that it somehow was distinguished. That case was entirely about long-term periods of military service. Miss Barbara Werner that we lost on when we lost on the appeal but Miss Barbara Werner's the records very clear she was gone for over two years and the record on appeal in that case is in a decision is also very clear discussing other service members who work at the Washington State Patrol who had their schedules changed while they were gone on long periods in terms of military service. And so even the State Patrol follows that practice right now and continues to do so. And Martin did they refer to employment policy issue there that they consider reasonable? Employment policy I'm not quite sure that that favors your position if we consider Martin and that particular comment that they made. Yeah that so the issue in Martin a little bit a little bit different than here. We did argue that it was a violation of you Sarah. We did not argue in Martin that it was that it was a violation of 4311 discrimination. That is what's argued here. A couple key pronouncements in the Martin case. In the Martin case the Court of Appeals found that the leave available under the RCW is leave protected by you Sarah 4303. It is a bit benefit of employment. Second with regard to the Martin case they specifically found that the denial of the military leave benefit was not a denial of a of a seniority right it was a denial of a non-seniority right. That's exactly what we have here. I guess what's your best argument to support the contention that the policy here was not also a reasonable employment policy? This is this is not a reasonable policy your honor. Why not? When we look at the implementing regulation for the rights and the rights and protections of service members while they're away on their military service that's 4316 and for inclusive of that is 4316 D. The DOL regulations implementing those rights and benefits protections while they're away on their military service is 20 CFR I believe it's 1002149 and in that in within that it states that during the period of leave or absence the service members to be treated as if they're on furlough or leave of absence and it goes on to say very specifically that the characterization of the employees absence or their status of their military service by the employer makes no difference whatsoever as to the we have the Washington State Court of Appeals telling us that the rights and benefits under the RCW are non-seniority rights and benefits the denial of those rights and benefits and I've read from the I can read from the case but the language is pretty powerful said none is it extremely discriminatory and run along law if the employer chose not to place the employee on the schedule for the mere purposes of denying them leave. So counsel let me jump in here I would under your reading of the statute meaning yours someone could be on leave because sometimes these tours are very long that's right they can be on leave three four years they could get re-upped and therefore they're talking about maybe a hundred days they might have to credit for leave if someone's on leave for four or five years what's your response to that? Well for I'll take the last part first the last part first they're only mr. lieutenant beard and anybody else is only entitled to 21 days how they use that but per year correct per year that's it so if it was for if it was four years though that well if it was four years the laws already addresses this trying to figure out which way to go with this to address your question why what we're talking about is a hypothetical that came up in the response brief and a hypothetical is someone goes on military leave forever right I'm just gonna get 21 days forever it's it's unrealistic and it flies in the face of what the law and this issue has already been settled we look at the Erickson versus United States Postal Service case that was an issue of job abandonment and in that case and if we apply you Sarah appropriately to the facts in this case as well if it comes to it you Sarah has a five-year limit on its protections for service members so a service member who manifested an intent to abandon their employment by staying on active duty for a long period of time would have lost there and I'm gonna read from the case just for a brief second would have lost their protections under 4311 in in that case the federal so I think I've described the the background of the case the service member was terminated from employment and appealed that decision based and it was terminated based on job abandonment and the question before the court was well did he abandon his 4311 anti-discrimination rights when he abandoned his job the court found no he didn't abandon his job he didn't abandon his job because he didn't manifest an intent and went on to say that the 30 that that five-year cap also applies to you sir to 38 USC 4311 anti-discrimination provisions where the alleged discrimination is based on the military related absences otherwise the five-year limit on the employer's obligation to rehire the employee who took this military service would be meaningless the Erickson case here in addition to the so that's you Sarah under Washington law on chapter 73 we have what I call the mini you Sarah it mirrors you Sarah almost perfectly it also has a four-year cap on its extension of time with numerous exceptions so the legislature in writing this statute would not have written a statute that would in any way conflict with another statute on related grounds so for example the Reemployment Rights Center that here on the evidence looking at mr. Bearden's case we clearly have no record or no no indication whatsoever a job abandonment mr. Bearden is not on active duties he's on active duty status but he's a reservist who's been called active duty under title 32 orders and with those orders they're specifically listed in the statute as title 32 and if he goes beyond the five years without whatever exceptions apply then that would become an issue of a manifest intent to abandon his job and he would at that point in time waive his use and it could be argued that the under the Washington state statute as well RCW 73 16 so I hope that answered your question did you want to reserve I do have to if there's another question I'd like to take it for okay good morning may it please the court my name is Beth McIntyre and I am here on behalf of the respondents City of Ocean Shores in the estate of Crystal Dingler which I'll just refer to collectively as the city for brevity's sake there's it's interesting to note that mr. Bearden has described himself as a lieutenant for the Ocean Shores Fire Department because in fact he has not worked a single day for the Ocean Shores Fire Department since the fall of 2019 and in fact the city has not heard from mr. Bearden since 2022 in the record is the last official notice that the city's received of mr. Bearden's military status which is the request for a stay that was entered in the district court action where he had put in orders showing that he was going to be on duty through and that's the last that the city has received of notice regarding his military status I will also state just for candor although it's not neither party put it in in the appellate record in June of 2022 mr. Bearden filed a request for relief from the state stating that he'd been relieved from active duty and my assumption is that he has received new orders because that had been his pattern to get orders that continue his service over time that has not been provided to the city mr. Bearden has taken the position in pleadings filed in this case in the underlying district court action that he has no obligation under our CW 340 060 to provide documentation to support his for military leave so the position he's taking is that the city is required and has been required since 2020 to pay him every single year for 21 days of paid military leave despite not really being able to verify that he's on military leave and really not even being able to verify that he ever intends to return to the city and in fact we have evidence in this case that he may never intend to return because he has alleged that he believes he's been constructively discharged from the city now a constructive discharge occurs when an employee quits their job because the employer has made their working conditions intolerable we dispute that mr. Bearden ever had intolerable working conditions but that's his allegation that he quit because of intolerable working conditions well if he quit his job that suggests he's never coming back so is this just an indefinite obligation to be paying him year after year after year that is not what our CW 3840 060 contemplates we submitted contemplates the payment of paid military leave as we did in 2019 when an employee goes on military leave for either active duty as in that time it was title 32 but once that leave is extended to the point that that employee is on an unpaid leave of absence military furlough leave of absence that employees no longer scheduled to work so and so your meaning of scheduled to work is what it means that that employee has now can't has expressed an intent to return to work through our CDA or I'm sorry 38 USC 43 12 and that that can be informal the submitting an application to reemploy can't even be verbal but has said I'm coming back to work great we're gonna put you on the schedule he has that reemployment right and then when he comes back to work he has that paid leave available to him so for example when he submitted the orders in August of 2020 those those orders put him through to our I might be getting yet to May of 21 we have the assumption we had no reason to think he wouldn't be returning to work then and then when he came back to work he would have those paid he would be on the schedule and which he could take paid military leave so so on that theory then was mr. Bearden scheduled to work for the 2019-2020 fiscal year was he already I guess I want to ask was he already on the calendar for 21 specific days yes and I'll tell you why under 38 USC 43 16 D an employee has the right to use any available accrued leave that they accrued before the commencement of their leave and this is another point that I want to raise because they're using that statute to say it applies to future years which it doesn't because it applies to leave that accrued before they went on leave so but it makes it just because I want that because he was scheduled to work he was entitled to that pay yes not only that but Kelly days was he on the schedule to work was okay he was and so what I'm trying to reconcile and it is do you think that understanding is consistent with how the Washington Court of Appeals interpreted the term in Martin no no I think Martin was a completely different situation that they addressed so and and I respectfully disagree with mr. Bearden's counsel's interpretation of Martin so what Martin dealt with was a policy change that changed the schedule of employees on long-term leave not just military leave any long-term leave other than FMLA leave so when an employee was on a 410 schedule after 15 days they switched it to an 85 schedule employees on military leave objected to that because it had the effect of reducing the amount of pay they received for those last six days of paid military leave and it expedited the rate at which that exhausted that was the issue in Martin and both the trial court and the Court of Appeals agreed that the state patrol policy was a valid policy it did not unreasonably deny them a right but they were entitled to under 38 40 0 6 0 and there's another point that I want to make with respect to Martin I think is important plaintiffs counselor mr. Bearden's counsel has suggested that Martin the Martin decision reflects that the Washington State Patrol credited annually this 21 days of leave that did not happen at least it does not happen as expressed in that Martin opinion and the trooper at issue and Martin was Werner she went on leave in September of 2017 and returned in November of 2018 nowhere in there does it discuss what happened to her leave when the leave year began in October of 2018 had she been paid her leave starting October 2018 which is what a pellet is saying should have been done that actually would have been detrimental to trooper Werner and would have reflected the sort of a logical problem with the argument they're making because she would have been paid that leave at an 8-5 rate rather than the 4-10 rate and she would have exhausted that leave before she came back to work in November of 2018 when she would have needed it for the rest of the leave year to take scheduled days for military leave so it was an apples-and-oranges issue there and another point I want to make about Martin is Martin was decided in April of 2023 our district court decision in this case was December of 2022 Martin was aware of our district court decision and in fact cited it if the Court of Appeals in Washington believed that the district court in this case misinterpreted state law that is made an incorrect eerie guess about how state law should be interpreted I believe that the Court of Appeals in Washington would have made and rectified that would have stated that and it didn't it actually cited our appellate our district court case in the Martin case and it did not cite it disapprovingly and so I think it is incorrect to suggest that Martin is the exact same situation as what we have here it's not and it's more incorrect to suggest that the Martin case is demonstrates an error in the district's courts decision in this case I'm just trying to the comment in Martin this gives me some pause I guess because they commented that an employer who refused to schedule employees on leave for any work at all avoiding to you know thereby avoiding its military paid leave obligation altogether would be an absurd result so here you're saying that during the 2019-2020 period Mr. Bearden was on the schedule to work I guess there was an actual schedule and he had days he was I and then for the next fiscal year was he on the schedule or he was not put on the schedule was not on the schedule after February 20th of 2020 that is when all of his leave exhausted he was notified of that and he said that was perfect and but he was in fact scheduled which shows again the error of their argument we didn't refuse to schedule him to avoid paying him his military leave we paid him his military leave in 2019 all 21 days we put him on the schedule for those 21 days let me 2019-2020 which would have ended October 1 of 20 correct right let's say he had more leave or that he had to be paid for his military leave for November say he had time in November would he have been paid are you asking like let's say he is that your question well because we're going by fiscal year and I'm just wondering is there any ambiguity about applying the schedule to work when we're looking after October of 2020 and before February what would happen if he were to take he was requesting on the new fiscal year so the new fiscal year beginning October 1 2020 we would have happily scheduled him to work if he expressed an interest in coming back to work through the provisions of you Sarah's reemployment provisions and that doesn't you're saying you're a lot he did not he did not he has not to this day expressed an interest in coming back to work not to this day it's been almost five years and I will say that that's the between that and the comment in Martin right right yeah we we have not refused to schedule him to work so as to avoid paying him we did schedule him to work when he wasn't working so as to pay him his military leave but he's been gone a hundred and eighty days plus he's been gone many years plus and that duration of leave is an important factor when we're looking at that that provision in 4316 be the non-seniority benefits because mr. Beard is making the argument that it we should just be looking at military leave generally the codified federal regulations excuse me that talks about how do you compare non-seniority benefits says the duration of leave is perhaps the most significant factor when you compare them so it is appropriate to compare military leave for weekend duty versus military leave that is four years and running it is different help me out with the practicalities here how much money is at stake you know your honor it is mr. Bearden represented 17,000 was the first year but he will also claim and and if if it was granted escalator provisions so whatever that you know increased that the bargaining unit increased their wages year by year by year so whatever that would be 21 days a year but it would also be conceivably into the future so he would have been paid $17,000 for 21 days of he's a firefighter so 21 days is 24 hour shifts so basically is this like two and a half months okay and also help me out with this request for certification do you oppose the do you support you know you stand on that your honor I would have to say that I'm neutral on that I don't believe that it's necessary to resolve this issue to have the Washington Supreme Court resolve that but I will acknowledge that this precise issue has not been addressed in a Washington Court of Appeal or Supreme Court decision there is very little case law on 3840 060 which you probably have gathered through the briefing that's right I mean but in one time sometimes you look at how much case law there is for a sense how often the question comes up on the other hand it may be that there are a lot of cases in which it's interpreted one way or the other and nobody fights about it so the question may come up a lot I don't know do you know how many people would be affected by the answer to this question I would expect a lot just because there are a lot of employees that take military leave and the concern from a from a municipalities perspective is when you have employees that effectively choose to leave their public employment to pursue a military career and maybe never intend to return to their public employment and yet have a mechanism in place for having what is effectively a pension for some number of years in the future which is not what the law was provide thank you yeah thank you very much okay where I begin I'm going to clear up just a couple issues with regard to the record that the city argues that they have absolutely no notice about whether or not Travis Bearden is intending to return to work simply it's just not true he testified very clearly in his deposition it's within the record I wish I had the citation for you right now he submitted the paperwork necessary to inform them I will get to that in just one moment he testified his deposition that the fact that he was going to be returning to work when we look back on the schedule your earlier questions were regarding October of 2020 he did request additional military leave he did submit his orders and when we look at the key we look at the case he in fact this is may not be in the record but it's what happens is he says he which days he wants to do that during the course of the year which days does he want to burn up those days of leave that's exactly what happened in the Martin case I don't know if you answered my question I'm sorry you can't just answer did he submit the necessary paperwork to inform his employer that he was intending to return to work no he did not submit paperwork and there is no requirement under our schedule how are they to schedule him to work if they didn't think he was coming back exactly as they did in 2019 when he selected the dates by which he wanted to be paid for military leave during that course of that year exactly the way the State Patrol did it they just arbitrarily made up a new schedule people worked for tens they put him on five eights well but they knew they were working that no they were not working they're on extended long-term periods of leave just exactly like Barbara Werner the trooper in that case had been gone for almost two years and her two years overlapped in November and the complaint in that case I was the counsel in that case the complaint in that case was that because of the way they treated her on the five days for four eight shifts because of that switch she had accelerated through her leave too quickly and when she returned she had less left and that did cover that fiscal year with regard to just one other question in the case is absolutely positive that the only reason Travis Bearden was denied his paid military leave is because of the city's arbitrary labeling categorizing his service as extended military leave quote-unquote from their from their argument and from the order because plaintiff was not furlough the city denied his request for leave this is what prompted the present lawsuit Travis Bearden in October after his previous years of leave that all burned out was fine he didn't want any more leave he wasn't entitled to that's why he said that's fine when October one came around he knew he had that next 21 days and he wanted to use it and he submitted the paperwork not to seek reemployment but he submitted the paperwork to be placed on a schedule whether it's fictitious or look back at what his previous schedule was or maybe they even invent a new policy to put him on five eights instead of the 24 hours back and forth will take us a minute or two over time but scheduled to work if he knows he cannot come because he's on active-duty military for the year in question schedule is just a fiction because he's not scheduled to work it's just a fiction why are we supposed to read the statute to have a fiction I don't think we're reading this this statute your honor to have a schedule to work as I addressed earlier the 4a was placed there to address the issues of whether or not they can charge for time when they would not normally be scheduled to work well yeah but it does say scheduled to work yeah and if there's no actual schedule and if there's no possibility that he will come to work sounds like there's no schedule to work because we know he can't he won't he's gonna be on active-duty military service I understand that and I think that's where the misinterpretation of the trial court falls apart it's just practically not going to be the case that an employer places a service member hey I'm gonna be sure I'm going on active-duty for a year they don't actually put them on a physical schedule what they're doing is they're paying them according to this schedule they had that's what they did in the trooper cases they didn't write down Travis Bearden shift 3 on day 3 they're never gonna do that when somebody has given notice that they're gone one other one other piece here I would just want to if the if this interpretation of this stands any employer could say oh what is extended period of military leave we don't know there's no definition for it it's not you Sarah it's not in the RCW it's completely made up any employer could say that oh you're on extended military leave so you're not scheduled to work it could be a two weeks in the summer it could be 21 days it could be 30 days it could be three months they're not gonna put them on the schedule because we're gonna save that money all right thank you very much the case of Travis Bearden versus a city of ocean source is submitted mr.
judges: MURGUIA, FLETCHER, OWENS